**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ina Beam,<br><br>    Plaintiff,<br><br>vs.<br><br>Office of Navajo and Hopi Indian Relocation,<br><br>    Defendant. | No. CV-21-08149-PCT-SPL<br><br>**ORDER** |

Before the Court are Plaintiff Ina Beam's ("Plaintiff") Motion for Summary Judgment (Doc. 13) and Defendant Office of Navajo and Hopi Indian Relocation's ("Defendant") Cross-Motion for Summary Judgment (Doc. 17). Both Motions have been fully briefed. (Docs. 13, 17, 21 & 23). For the following reasons, Plaintiff's Motion will be granted, Defendant's Cross-Motion will be denied, and the matter will be remanded for further proceedings.[1]

**I.   BACKGROUND**

  **A. The Settlement Act**

The Navajo–Hopi Settlement Act (the "Settlement Act") authorized a court-ordered partition of land previously referred to as the Joint Use Area—occupied by both Navajo and Hopi residents—into the Navajo Partitioned Lands and the Hopi Partitioned Lands

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. See LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

("HPL"). *See* Pub. L. No. 93-531, § 12, 88 Stat. 1716 (1974); *Clinton v. Babbitt*, 180 F.3d 1081, 1084 (9th Cir. 1999). The Settlement Act created what is now the Office of Navajo and Hopi Indian Relocation ("ONHIR") to disburse benefits to assist with the relocation of Navajo and Hopi residents who then occupied land allocated to the other tribe. *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121–22 (9th Cir. 1989).

### B. Factual and Procedural Background

Plaintiff is an enrolled member of the Navajo Nation. (Doc. 1 at 2). On January 25, 2010, Plaintiff filed an Application for Relocation Benefits, which was denied by ONHIR on December 20, 2012. (Doc. 14 at 4). The ONHIR's denial letter stated that the agency found that Plaintiff had not proven she was a head of household as of her move-off date, making her ineligible. (Doc. 8 at 39). Specifically, the denial letter stated:

> In response to question 9 on page 7 of your Application, you stated that you moved off the HPL in "about 1982 or 1983." As of 1982 and 1983, you were not a Head of Household. Specifically, you were not married (you first married on May 31, 1986), you were not a parent (your first child was born on January 28, 1992), and you were not self-supporting (according to your Social Security Earnings statement, you first earned $1,300.00 or more per year in 1984).

(*Id.*). On January 16, 2013, Plaintiff filed a Notice of Appeal, (*Id.* at 44), and a hearing was held before an Independent Hearing Officer ("IHO") on March 20, 2015. (Doc. 14 at 4). At the Hearing, the ONHIR stipulated to the fact that Plaintiff became a head of household in 1984, when she earned $1,735. (Doc. 8 at 184). The remaining issue was whether Plaintiff was a legal resident of the HPL at the time she became a head of household in 1984. (*See* Doc. 8 at 192 (IHO acknowledging that the issue at the Hearing was "whether or not the residency was maintained through the time that [Plaintiff] became a head-of-household")). After the Hearing, the IHO denied Plaintiff's appeal and upheld the ONHIR's denial of her application based on a finding that Plaintiff was no longer a legal resident of the HPL by the time she became a head of household in 1984.[2] (*Id.* at 283–85).

---

[2] The Court notes that the IHO affirmed the ONHIR's denial, but that he did so on

On July 1, 2015, ONHIR issued Final Agency Action in Plaintiff's case. (*Id.* at 4). On July 1, 2021, Plaintiff initiated this action seeking judicial review of the denial of relocation benefits. (Doc. 1).

## II.     LEGAL STANDARDS

### A. Summary Judgment

Generally, summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When conducting judicial review of an administrative agency's action, "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985). Rather, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* Summary judgment is therefore "an appropriate mechanism for deciding the legal question of whether [an] agency could reasonably have found the facts as it did." *Id.* at 770.

### B. APA Standards of Review

The Court's review of the IHO's decision under the Settlement Act is governed by the Administrative Procedure Act ("APA"). *See Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995). Under the APA, the Court must uphold agency action unless it was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni*, 878 F.2d at 1122.

An ONHIR decision satisfies the "arbitrary and capricious" standard if "the agency examine[s] the relevant data and articulate[s] a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Hopi Tribe*, 46 F.3d at 914 (internal quotation marks omitted). This scope of review is narrow, and the Court may not "substitute its judgment for that of the agency." *Id.* (internal quotation marks omitted). Still, a decision is arbitrary and capricious "if the agency . . . entirely failed to

---

slightly different grounds. While the ONHIR found that Plaintiff was not a head of household, the IHO found that Plaintiff was not an HPL resident at the time she became a head of household.

consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Likewise, if an agency "fails to follow its own precedent or fails to give a sufficient explanation for failing to do so," its decision is arbitrary and capricious. *Andrzejewski v. Fed. Aviation Admin.*, 563 F.3d 796, 799 (9th Cir. 2009).

An agency's decision satisfies the "substantial evidence" standard if it is supported by "such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). The standard requires "more than a mere scintilla but less than a preponderance" of evidence. *Id.* The IHO may "draw inferences logically flowing from the evidence." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). "Where evidence is susceptible of more than one rational interpretation," the IHO's decision must be upheld. *Id.*

### C.  The Settlement Act and Associated Regulations

A Navajo applicant is eligible for benefits under the Settlement Act if he was a legal resident of the HPL as of December 22, 1974 and was a head of household at the time he moved off the HPL. 25 C.F.R. §§ 700.147(a), 700.69(c); *Begay v. Off. of Navajo & Hopi Indian Relocation*, 305 F. Supp. 3d 1040, 1044 (D. Ariz. 2018). The applicant bears the burden of proving both the residency and head-of-household elements. 25 C.F.R. § 700.147(b). Only the residency element is at issue in this case, as the parties agree that Plaintiff became a head of household in 1984. (Doc. 13 at 5; Doc. 17 at 11).

Under the applicable regulations, determining an applicant's residence "requires an examination of a person's intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22,278; *see also Charles v. Off. of Navajo & Hopi Indian Relocation*, 774 Fed. Appx. 389, 390 (9th Cir. 2019). Such manifestations of intent may include ownership of livestock, ownership of improvements, grazing permits, livestock sales receipts, homesite leases, public health records, medical records, school records, military records,

employment records, mailing address records, banking records, driver's license records, voting records, home ownership or rental off the Joint Use Area, census data, Social Security records, marital records, court records, birth records, the Joint Use Area roster, and any other relevant data. 49 Fed. Reg. 22, 278. "An individual who was, on December 22, 1974, away from the land partitioned to the Tribe of which he/she is not a member may still be able to prove legal residency." 49 Fed. Reg. 22,277.

### III.     DISCUSSION

As noted above, only the residency element is at issue on this appeal because the IHO found that Plaintiff met the head-of-household requirement in 1984 after Defendant stipulated to such at the Hearing. That said, Plaintiff appears to argue that the IHO erred with respect to his finding on the head-of-household requirement. In her Motion, Plaintiff spends nearly three pages articulating the standard used for determining whether one is a head of household. (Doc. 13 at 4–6). Plaintiff explains that an annual income of $1,300 creates a presumption of self-support and that college scholarships may be considered in the analysis. (*Id.* at 4–5). Plaintiff then appears to assert that, despite Defendant's stipulation that she became a head of household in 1984, the IHO "changed his position" on the issue without providing any reasoned analysis and that "[a]ny finding that [Plaintiff] was not a head of household [in 1984] . . . is not supported by substantial evidence." (*Id.* at 6). Later, Plaintiff returns to the issue by citing to caselaw holding that "a decision by the [IHO] to disregard the stipulation would be arbitrary and such a decision must be set aside." (*Id.* at 11). In the Response, Defendant reiterates that it does not dispute that Plaintiff became a head of household in 1984 and notes that Plaintiff's Motion "fails to describe how the IHO 'changed his position' in the Decision." (Doc. 17 at 11). Despite this, Plaintiff again returns to the head-of-household issue in her Reply brief by setting forth when one qualifies as "self-supporting" and asserting that "[i]t was the [IHO]'s duty to articulate a rational basis for his finding that [Plaintiff] did not attain head of household status in the summer of 1984." (Doc. 21 at 4).

As Defendant points out in its briefing, Plaintiff's extensive arguments with respect

to the head-of-household requirement are perplexing given that the IHO specifically stated, "[e]ven though [Plaintiff] *may be considered a self-supporting head of household* at some point in time in 1984, . . . she was not a legal resident of [the HPL]." (Doc. 8 at 282 (emphasis added)). There is no indication that the IHO rejected or otherwise disregarded Defendant's stipulation that Plaintiff achieved head-of-household status in 1984; the IHO's denial of benefits was based entirely on Plaintiff's failure to meet the residency requirement. Therefore, it is unclear why Plaintiff repeatedly raises the head-of-household issue as a reason for this Court to reverse the IHO's Decision (the "Decision").[3] If Plaintiff were instead arguing that she obtained head-of-household status *earlier* than 1984 and that the IHO erred in not finding so, the head-of-household issue might be relevant on this appeal because the parties do not dispute—indeed, the IHO even recognized—that Plaintiff was an HPL resident at some point prior to 1984. However, Plaintiff makes no such argument. Therefore, the Court finds no reason to analyze or otherwise question the IHO's head-of-household determination and will move forward under the assumption that Plaintiff achieved head-of-household status in 1984.

With respect to the residency requirement, the Court will first provide a summary of the IHO's conclusion that Plaintiff was not an HPL resident in 1984. The IHO noted that Plaintiff was born on November 15, 1966 and that her family resided on the Red Lake Chapter of the HPL at that time. (Doc. 8 at 280, 282). Plaintiff's HPL residency was maintained until at least December 22, 1974, as evidenced by her parents' own eligibility for relocation benefits and the fact that she was an 8-year-old dependent minor. (*Id.* at 282). Indeed, the IHO specifically recognized that Plaintiff's HPL residency "persevered during most of her minority." (*Id.* at 284). In the mid-1970's, however, Plaintiff's parents established a residence off HPL land, in Tuba City, Arizona. (*Id.* at 280). The IHO found

---

[3] The Court acknowledges the possibility that Plaintiff made the head-of-household arguments because the ONHIR *originally* denied benefits because Plaintiff was not a head of household. (*See* Doc. 8 at 39). That said, given the parties' stipulation on the issue—and that the IHO accepted that stipulation—the Court need not address the head-of-household element on this appeal.

6

that the Tuba City residence became Plaintiff's "primary physical residence" beginning around 1975 or 1976, *i.e.*, when she was "at least 9 or 10 years old." (*Id.* at 282; 284). Plaintiff's attended Tuba City schools and commuted daily from the Tuba City residence. (*Id.* at 283). The IHO found that Plaintiff's activities were centered there as well, pointing to her participation in successive Summer Youth Programs and her work as a cashier during her senior year of high school. (*Id.*). Despite the Tuba City residence, however, the IHO acknowledged that there was "no question" that Plaintiff's parents "retained substantial and recurring contacts" with the Red Lake residence "for some period of time during [Plaintiff]'s minority." (*Id.* at 283). Specifically, Plaintiff's father maintained ministerial duties on the HPL. (*Id.* at 280). Additionally, Plaintiff's grandparents still lived at the Red Lake residence, and her parents regularly returned to care for them. The IHO recognized that Plaintiff also visited the Red Lake residence during this time, helping with "chores, livestock and planting." (*Id.*).

The IHO found that, at some point, Plaintiff's "many and significant connections" with Tuba City outweighed her visits to and contacts with the Red Lake residence, which had been "waning." (*Id.* at 284). However, the IHO failed to identify an exact date upon which Plaintiff's HPL residency was extinguished. In one part of the Decision, the IHO stated that Plaintiff's "claim to legal residence in Red Lake was eliminated *earlier than* [the fall of 1984]." (*Id.* at 285 (emphasis added)). Yet in another part, the IHO stated that Plaintiff's claim to residence in Red Lake "was voluntarily and exuberantly extinguished *when she turned 18* [on November 15, 1984]" and enrolled in the Tuba City Chapter of the Navajo Nation. (*Id.* at 284 (emphasis added)). The exact timing is important because, as noted above, it is undisputed that Plaintiff became a head of household at some point in the late summer or early fall of 1984. If there were any overlap between her Red Lake residency and her head of household status, Plaintiff would have met both requirements and would presumably be entitled to benefits.

It is likely impossible to identify an "exact date" upon which Plaintiff's contacts with the Red Lake residence were outweighed to the point of extinguishing her HPL

7

residency. It is without question, however, that the frequency of Plaintiff's visits to the Red Lake residence is a critical consideration in the residency analysis in this case. At the Hearing, Plaintiff testified that the Red Lake residence "was always like our second home," (*Id.* at 185), and that she and her parents would visit the Red Lake residence "[a]t least once a week, once or twice a week" throughout her childhood (*Id.* at 187). She further testified that, in the summer of 1984, she and her mother—who by that point was the sole caretaker of her paternal grandmother—would go to the Red Lake residence "[a]t least three times a week." (*Id.* at 189). Plaintiff's mother testified that she and her family would visit the Red Lake residence "[e]very week, every, almost every week" for two or three days at a time. (*Id.* at 201, 203). In the Decision, the IHO found that Plaintiff and her mother's testimony about the frequency of Plaintiff's visits to the Red Lake residence was "exaggerated and not credible." (*Id.* at 281). These credibility determinations were particularly important given the IHO's conclusion that Plaintiff's visits to and contacts with the Red Lake residence dissipated to the point that her HPL residency was extinguished by the time she became a head of household in 1984.

On this appeal, Plaintiff argues that she was an HPL resident until her family moved off the HPL in April 1985. (Doc. 13 at 6). Plaintiff argues that the IHO's Decision was arbitrary, capricious, and unsupported by substantial evidence because (1) the IHO deviated from agency policy and erroneously found that Plaintiff was not an HPL resident until April 1985 (Doc. 13 at 6–12; Doc. 21 at 5–12); (2) the IHO's credibility determinations with respect to the testimony of Plaintiff and her mother were not supported by substantial evidence (Doc. 13 at 12–14; Doc. 21 at 13–15); and (3) the IHO's denial of benefits was inconsistent with the ONHIR's federal trust responsibilities (Doc. 13 at 14–16). The Court need only address the second argument. *See Bitah v. Off. of Navajo & Hopi Indian Relocation*, No. CV-20-08323-PCT-JZB, 2022 WL 1751836, at *6, *10 (D. Ariz. Mar. 30, 2022) ("Because the Court will remand this action, it makes no conclusions as to the remaining arguments.").

In a section of the Decision titled "Credibility Findings," the IHO states the

8

following with respect to Plaintiff and her mother, Mary Mexicano:

> 1. [Plaintiff]: [Plaintiff] testified about the residence at Red Lake and the residence in Tuba City and she testified about her return visits to her grandmother's home in Red Lake. [Plaintiff] also testified about her education and employment. [Plaintiff] is a credible witness except about the frequency of her visitation to her grandparents' residence in Red Lake which the undersigned finds to be exaggerated and not credible.
>
> 2. Mary Mexicano: [Plaintiff]'s mother testified about [Plaintiff] living with her through her high school graduation and she testified about the family's return visits to Red Lake. Mary Mexicano is a credible witness except about the frequency of [Plaintiff]'s visitation to her grandparents' residence in Red Lake which the undersigned finds to be exaggerated and not credible.

(Doc. 8 at 281). Plaintiff cites to caselaw indicating that such negative credibility evaluations—*i.e.*, that their testimony concerning the frequency of Plaintiff's visits to the Red Lake residence was "exaggerated and not credible"—require the support of "specific, cogent reasons" constituting substantial evidence. (Doc. 13 at 12–13). Plaintiff argues that the IHO in this case failed to provide such supportive reasoning. The Court agrees.

"When the decision of an [IHO] rests on a negative credibility evaluation, the [IHO] must make findings on the record and must support those findings by pointing to substantial evidence on the record." *Ceguerra v. Sec'y of Health & Hum. Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) (citation omitted); *see also Hossain v. Immigr. & Naturalization Serv.*, 7 Fed. Appx. 760, 760 (9th Cir. 2001) ("We review credibility determinations for substantial evidence and defer to credibility findings that are fairly supported by the record and supported by specific and cogent reasons for the rejection of the testimony."). The Ninth Circuit has further explained that "if an [IHO] has grounds for disbelieving material testimony, it is both reasonable and desirable to require the ALJ to articulate those grounds in the original decision." *Ceguerra*, 933 F.2d at 740 (citing *Varney v. Sec'y of Health & Hum. Servs.*, 859 F.2d 1396 (9th Cir. 1988)). Here, the IHO failed to articulate reasons supporting his conclusion that Plaintiff and her mother's testimony concerning "the frequency of [Plaintiff]'s visitation to her grandparents' residence in Red Lake . . . [is]

exaggerated and not credible," while simultaneously finding the rest of Plaintiff and her mother's testimony to be credible. Moreover—and as discussed above—such testimony was undoubtedly "material," as it was the "waning" frequency of Plaintiff's visits to and contacts with the Red Lake residence that perhaps most significantly supported the IHO's conclusion that Plaintiff's claim to legal residence on the HPL "was eliminated earlier than [1984]." (Doc. 8 at 284, 285).

This Court does not overlook that an IHO's credibility findings are typically "granted substantial deference by reviewing courts." *De Valle v. Immigr. & Naturalization Serv.*, 901 F.2d 787, 792 (9th Cir. 1990) (citations omitted). This is because it is the IHO who is "in a position to observe [a witness]'s tone and demeanor, to explore inconsistences in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence." *Sarvia-Quintanilla v. U.S. Immigr. & Naturalization Serv.*, 767 F.2d 1387, 1395 (9th Cir. 1985). As the Ninth Circuit has put it, the IHO is thus "uniquely qualified to decide whether a [witness]'s testimony has about it the ring of truth." *Id.* That said, the fact remains that "an adverse credibility finding must be supported by specific, cogent reasons, and cannot be based on speculation and conjecture." *Shire v. Ashcroft*, 388 F.3d 1288, 1295 (9th Cir. 2004). Here, the IHO's one-sentence credibility determinations, as provided above, merely state that the IHO found the testimony to be "exaggerated and not credible" without any other explanation or support.

Defendant argues that the IHO's supportive reasoning in this case is found in the body of the Decision, rather than formally stated in the "Credibility Findings" section. (Doc. 17 at 16). Indeed, this Court has recognized that "[t]he IHO may set forward [credibility reasoning] either in the formal credibility determination or in the body of the decision." *Begay v. Off. of Navajo & Hopi Indian Relocation*, 2021 WL 4247919, No. CV-20-08102-PCT-SMB, at *4 (D. Ariz. Sept. 17, 2021) (citation omitted). Specifically, Defendant points to three instances in the body of the Decision where it asserts that the IHO provided "specific, cogent reasons for his negative credibility determinations." (Doc. 17 at 16). First, Defendant points to the IHO's conclusion that Plaintiff's visits to the HPL

"paled by comparison" to her "many and significant connections to Tuba City." (Doc. 8 at 284). This statement would only support the IHO's credibility determinations if it explained *why* or *how* Plaintiff's visits to the HPL "paled by comparison" to her Tuba City connections. In other words, the IHO should have pointed to specific evidence in the record indicating that Plaintiff's visits to the HPL were fewer and less frequent than what she testified to, which would have supported his negative credibility determinations by showing that Plaintiff's testimony was inconsistent with the record. As it stands, however, the IHO's own conclusion that Plaintiff's visits "paled by comparison" is, at best, a conclusory assertion that is insufficient to prove that Plaintiff and her mother were exaggerating. At worst, it is nothing more than circular reasoning: the IHO does not prove that Plaintiff and her mother were exaggerating Plaintiff's visitation frequency by asserting, without any evidence, that Plaintiff did not visit frequently. The logical fallacy can also be seen by considering that the frequency of Plaintiff's visits to the HPL and her connections to Tuba City could be mutually exclusive: Plaintiff may very well have visited the HPL *just as often* as she and her mother testified and, at the same time, Plaintiff may have still had significantly more connections to Tuba City. In sum, the Court does not find that the IHO's conclusion that Plaintiff's visits to the HPL "paled by comparison" to her Tuba City connections provides any support for why Plaintiff and her mother's testimony was "exaggerated and not credible."

Second, Defendant points to the IHO's conclusion that Plaintiff's "father had a heart condition that prevented him from caring for his parents" and that "overall [the family's] contacts with Red Lake were waning." (*Id.*). Again, such conclusions do not prove or even necessarily support that Plaintiff and her mother were exaggerating about Plaintiff's visitation frequency. Plaintiff's father's heart condition may have prevented *him* from caring for and visiting his parents, but it says nothing about whether Plaintiff was visiting the HPL any less than she testified to. Indeed, Plaintiff specifically testified that she and her mother visited the Red Lake residence "[a]t least three times a week" in the summer of 1984 when her mother became the sole caretaker for Plaintiff's grandmother in light of

Plaintiff's father's heart condition. (*Id.* at 189). Meanwhile, the IHO's conclusion that the family's "contacts with Red Lake were waning"—without any supporting evidence—is merely another conclusory assertion and circular argument. The IHO cannot support his finding that Plaintiff and her mother were exaggerating Plaintiff's visitation frequency by pointing to his own finding that the family's contacts—that is, their visitation frequency—was "waning." The Court again finds no support for the IHO's credibility determinations.

Third, Defendant points to the IHO's statement that Plaintiff's parents "may have had an imperative to go to Red Lake up to 1984," but that Plaintiff "did not." (*Id.* at 285). Again, such a statement is little more than a conclusory assertion. The IHO fails to explain *why* or *how* he was able to conclude that Plaintiff lacked any "imperative" to go to Red Lake. To the contrary, the IHO himself recognized that, throughout her childhood, Plaintiff often visited the Red Lake residence to help with "chores, livestock and planting." (*Id.* at 280). The IHO fails to explain why those tasks did not amount to an "imperative" for Plaintiff's visits in 1984 or otherwise show that the need for Plaintiff to help with such tasks had by that point come to an end. The Court will not accept the IHO's entirely unsupported assertion that Plaintiff had no reason to visit the Red Lake residence as sufficient support for his finding that Plaintiff and her mother exaggerated Plaintiff's visits.

In sum, Defendant fails to point out any instance in which the IHO supported his negative credibility determinations with "specific, cogent reasons" from the record. *See Shire*, 388 F.3d at 1295. This Court's own review of the Decision failed to turn up any such instances either. The IHO *could* have supported his adverse credibility determinations by pointing to specific inconsistences between Plaintiff's testimony, her mother's testimony, and the record in this matter. *See De Valle*, 901 F.2d at 792 (pointing to specific inconsistency in the plaintiff's testimony as support for negative credibility determination); *Todicheeney v. Off. of Navajo & Hopi Relocation*, No. CV-21-08003-PCT-MTL, 2022 WL 1555394, at *6 (D. Ariz. May 17, 2022) (holding substantial evidence supported negative credibility determination where there were "stunning differen[ces]" between testimonies of two witnesses and that one witness's testimony "ranged far and wide and was thoroughly

inconsistent"). As just one example, the IHO could have noted the conflict between Plaintiff's assertion that she visited the Red Lake residence three times per week during the summer of 1984 and her testimony that she was working full-time, five days per week that same summer.[4] (Doc. 8 at 189–90). The IHO failed to provide any such support, and this Court cannot substitute its own reasoning on appeal. *See Ceguerra*, 933 F.2d at 738 (citation omitted) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.").

In sum, the Court finds that the IHO failed to provide substantial evidence to support his negative credibility determinations as to Plaintiff and her mother's testimony concerning the frequency of Plaintiff's visits to the Red Lake residence. Such testimony was material, as the frequency of Plaintiff's visits was a central factor in determining when her HPL residency was extinguished. Given the IHO's failure to satisfy the substantial evidence standard with respect to this material issue, the Court cannot uphold the IHO's Decision. Whether benefits should ultimately be awarded, however, remains with the IHO. Open questions remain as to the credibility of Plaintiff and her mother's testimony, as well as to whether Plaintiff satisfied the residency requirement at the time she became a head of household in the late summer or early fall of 1984. The Court will remand for a decision consistent with this Order.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 13) is **granted**. The matter is **remanded** for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (Doc. 17) is **denied**.

///

///

---

[4] The Court here is merely providing one example of how the IHO could have supported his negative credibility determination. The Court is *not* finding that this example would have been valid, let alone sufficient, support.

1 **IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Plaintiff and **terminate this action**.

Dated this 29th day of August, 2022.

*[signature]*
Honorable Steven P. Logan
United States District Judge